IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ELMORE NICHOLS, JR., #129913, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:06-CV-911-MHT |
| | ) | [WO] |
| | ) | |
| JEFFERY KNOX, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by

Elmore Nichols, Jr. ["Nichols"], a state inmate, on October 10, 2006.  In his complaint,

Nichols alleges Jeffery Knox, a correctional officer at the Easterling Correctional Facility,

confiscated a belt containing the words "Black Power" in retaliation for Nichols expressing

his political beliefs in violation of the First Amendment right to freedom of expression.

Nichols further argues confiscation of this belt constituted discrimination violative of the

Equal Protection Clause as the defendant allowed other inmates to express their political

views via visible, permanent body tattoos without requiring removal/restriction of the

tattoos.  Nichols seeks a declaratory judgment, injunctive relief and monetary damages for

the alleged violations of his constitutional rights.

The defendant filed a special report and supporting evidentiary materials addressing

Nichols' claims for relief.  Pursuant to the orders entered in this case, the court deems it

appropriate to treat this report as a motion for summary judgment.  *Order of January 9,*

*2007 - Court Doc. No. 12*.  Thus, this case is now pending on the defendant's motion for

summary judgment.  Upon consideration of such motion, the evidentiary materials filed in

support thereof and Nichols' response in opposition to the motion, the court concludes that

the defendant's motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is

no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th

Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c)

(Summary judgment "should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law.").[1]  The party moving

for summary judgment "always bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of the [record, including

---

[1]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendant has met his evidentiary burden and demonstrated the absence of any genuine issue of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

3

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal

citation omitted).  Consequently, to survive the defendant's properly supported motion for

summary judgment, Nichols is required to produce "sufficient [favorable] evidence" which

would be admissible at trial supporting his claims of constitutional violations.  *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil*

*Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ...

or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.

"A mere 'scintilla' of evidence supporting the opposing party's position will not suffice;

there must be enough of a showing that the [trier of fact] could reasonably find for that

party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202

(1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory

allegations based on subjective beliefs are likewise insufficient to create a genuine issue

of material fact and, therefore, do not suffice to oppose a motion for summary judgment.

*Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001);

*Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory

assertions ..., in the absence of [admissible] supporting evidence, are insufficient to

withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant

of summary judgment appropriate where inmate produces nothing beyond "his own

conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739

F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is

not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth

specific facts supported by requisite evidence sufficient to establish the existence of an

element essential to his case and on which the plaintiff will bear the burden of proof at

trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477

U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest*

*Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case

the plaintiff presents insufficient evidence to require submission of the case to the trier of

fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant.

*United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami,*

*Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the

substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of*

*the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only

factual disputes that are material under the substantive law governing the case will

preclude entry of summary judgment."). "The mere existence of some factual dispute will

not defeat summary judgment unless that factual dispute is material to an issue affecting

the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243

(11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the

party opposing summary judgment "must do more than simply show that there is some

metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11ᵗʰ Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Nichols fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

## A.  Absolute Immunity

Nichols sues defendant Knox "in his individual and official capacities."  *Plaintiff's Complaint (Attachment to Complaint) - Court Doc. No. 1* at 7.  With respect to the claims lodged against the defendant in his official capacity, he is immune from monetary damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).  In light of the foregoing, it is clear that defendant Knox is a state official entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from him in his official capacity.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## B.  The First Amendment Claim

Nichols complains defendant Knox confiscated his "Black Power" belt in retaliation for his expressing political views supporting the rights of African-Americans in violation of his First Amendment right to freedom of expression. Defendant Knox, however, maintains he confiscated the belt because he "believe[d] the belt ... a threat to the security of the facility" and the belt, as embossed, "is considered contraband" under applicable prison rules and regulations. *Defendants' Exhibit 1 (Affidavit of Jeffery Knox) - Court Doc. No. 11-2*; *Defendant's Exhibit 2 (Administrative Regulation No. 338(V)(7)(b)) - Court Doc. No. 11-3* at 3 (an inmate may have in his possession "[o]ne plain web belt...."); *Defendant's Exhibit 2 (Administrative Regulation No. 338(III)(B)) - Court Doc. No. 11-3* at 1 (Contraband is defined as "[a]ny item **NOT** ... retained in its present form ... or authorized by the Warden.").

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)]. As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987). Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which

necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877 (1979).

"In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804.  In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804.  Thus, while inmates retain a constitutional right protected by the First Amendment to freely exercise their sincerely held political beliefs, this right is limited by the fact of incarceration and valid penological objectives such as maintaining institutional security and order.  The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1878 ("[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees.").  It is therefore clear that preservation of security and

order within a correctional facility is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest. *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

"The first amendment prohibits state officials from retaliating against prisoners for exercising their right of free speech. *See, e.g., Wright v. Newsome*, [795 F.2d 964, 968 (11th Cir. 1986)].... The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1241-1242 (11th Cir. 1989); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "In prison, of course, first amendment rights are not absolute. *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Legitimate policies and goals of the correction system may justify restrictions limiting prisoners' [First Amendment] rights. 417 U.S. at 821." *Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986). "A prisoner retains those First Amendment rights that are 'not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrective system.' *Prison Legal News v. Cook*, 238 F.3d 1145, 1149 (9th Cir. 2001) (quoting *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (resist)) (internal quotation marks omitted).... [P]rison authorities have a legitimate penological interest in the consistent enforcement of prison rules and ... disciplining prisoners who attempt to coerce a guard into not enforcing prison rules is reasonably related to that interest." *Hargis v. Foster*, 312

10

F.3d 404, 409-410 (9th Cir. 2002); *see also Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989).  The situation is somewhat complicated when the alleged act of retaliation is undertaken to assure compliance with prison rules as inmates often attempt to "inappropriately insulate themselves from [such] actions by drawing the shield of retaliation around them."  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996).

To proceed on a claim for retaliation and withstand the entry of summary judgment, an "inmate must establish ... three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendant's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech.  *See Bennett v. Hendrix*, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)."  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999).  With respect to the causal relationship element, a prisoner must demonstrate that correctional officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred.  *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

Nichols alleges the defendant retaliated against him for expressing a political belief, thus satisfying the first element of his retaliation claim.  *Smith*, 532 F.3d at 1277.  The second element requires Nichols to demonstrate that the confiscation of his belt "would

likely deter a [prisoner] of ordinary firmness" from expressing his political beliefs. *Id*.

This "presents an objective standard and a factual inquiry." *Id*. The court assumes

*arguendo* that this standard has been met. Nevertheless, Nichols fails to satisfy the third

requisite element of a retaliation claim - a causal connection between his constitutionally

protected activity and the adverse action of the defendant.

The causal connection inquiry focuses on the "subjective motivation of the

defendant[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine

"whether the defendant[] [was] subjectively motivated to discipline" Nichols for expressing

a political belief. *Smith*, 532 F.3d at 1278. The subjective motivation issue is resolved by

most courts under the burden-shifting formula set forth in *Mount Healthy City Sch. Dist.*

*Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576 (1977). This formula requires

that the plaintiff first meet "his burden of establishing that his protected conduct was a

motivating factor behind any harm" and then "the burden of production shifts to the

defendant. If the defendant can show that he would have taken the same action in the

absence of the protected activity, he is entitled to prevail on summary judgment."

*Thaddeus-X*, 175 F.3d at 399, referencing the *Mt. Healthy* motive analysis.

It is essential that federal courts "carefully scrutinize retaliation claims" brought by

prisoners challenging adverse actions of correctional personnel. *Woods*, 60 F.3d at 1166.

"[C]ourts must approach prisoner claims of retaliation with skepticism and particular care.

*See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2nd Cir. 1983). This is [necessary because

prisoners'] ... claims of retaliation are ... easily fabricated [and] pose a substantial risk of

unwarranted judicial intrusion into matters of general prison administration.  This is so

because virtually any adverse action taken against a prisoner by a prison official--even

those otherwise not rising to the level of a constitutional violation--can be characterized

[by the prisoner] as a constitutionally proscribed retaliatory act."  *Dawes v. Walker*, 239

F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*,

534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

An inmate has the initial burden of establishing a prima facie case of unlawful

retaliation by showing "that his conduct was constitutionally protected and that this

conduct ... was a 'motivating factor'" behind the adverse action of the defendant.  *Mt.*

*Healthy*, 429 U.S. at 287, 97 S.Ct. At 576.  Merely alleging the ultimate fact of retaliation,

however, is insufficient.  *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*,

60 F.3d at 1166.  Additionally, conclusory allegations are insufficient to demonstrate the

existence of each element requisite to establishing retaliation.  *Morales*, 278 F.3d at 131;

*Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (Because prisoner retaliation claims

are prone to abuse, "we are careful to require non-conclusory allegations.").  If an inmate

meets his burden with appropriate evidence, the burden of production shifts to the

defendant to show that he "would have reached the same decision as to [plaintiff's

discipline] even in the absence of the protected conduct."  *Mt. Healthy*, 429 U.S. at 287,

97 S.Ct. at 576.  "Under the *Mt. Healthy* approach, if the government official 'can prove

that [he] would have taken the adverse action in the absence of the plaintiff's protected

conduct, [he] cannot be held liable.' *Thaddeus-X*, 175 F.3d at 388 n.4...." *Smith*, 532 F.3d

at 1278 n.22.

Nichols  makes  the conclusory and speculative assertion that defendant Knox

confiscated his belt because it contained a political view supporting African-Americans.

Nichols has submitted no direct evidence that his stated political view was a motivating

factor in the defendant's action and nothing in Nichols' response suggests the confiscation

of his belt was a mere pretext to punish Nichols for expressing a political belief.  In fact,

Nichols acknowledges other inmates of varying political affiliations, both black and white,

are allowed to freely express their political beliefs in body art and other platforms as

permitted by applicable rules and regulations.  The defendant also adamantly denies the

allegation of retaliation and argues the adverse action about which Nichols complains

occurred in an effort to maintain security and due to the manner in which Nichols presented

his political belief, i.e., alteration of his belt, not because of the belief expressed on the

belt.   Nichols offers only his conclusory allegation of ultimate fact that defendant Knox

retaliated against him for expressing a political view.  This allegation is insufficient to

defeat summary judgment.  *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d at 1564, n.6.

The record before the court is devoid of admissible or potentially admissible evidence,

direct or otherwise, from which a reasonable fact finder could infer the requisite motivating

factor.  Additionally, the circumstances, when taken as a whole, do not support making

such an inference.  Thus, Nichols' retaliation claim falters on this element.  Moreover, even assuming a reasonable fact finder could infer the motivating factor element, it is clear under *Mt. Healthy* that defendant Knox would have confiscated the belt regardless of the political nature of its inscription as an inmate's possession of anything other than a plain belt is violative of institutional rules.  *Turner*, 482 U.S. 91-92, 102 S.Ct. at 2262-2263. "Objective prison administrators standing in [the defendant's] shoes would assume that [allowing a violation of institutional rules] ... would be noised about the prison's population and, if ignored, could seriously impede their ability to maintain order and thus achieve the institution's penological objectives." *Smith*, 532 F.3d at 1279.  Consequently, the defendant is entitled to summary judgment on the First Amendment claim as Nichols fails to establish by appropriate evidence a causal relationship between the alleged protected activity and the adverse action taken against him.  *Id*. at 1278-1279.

### C.  The Equal Protection Claim

Nichols contends defendant Knox confiscated the "Black Power" belt in violation of his rights guaranteed by the Equal Protection Clause because other inmates are allowed to express their political views in the form of permanent body tattoos without repercussion. *Plaintiff's Complaint (Attachment to Complaint) - Court Doc. No. 1* at 9-10 ("[H]undreds of inmates, both black and white, exhibit some form of permanent tattoos on their person, some with tattoos over their entire body and visible to the eye, such as 'White Power,' 'White Pride,' Heil Hitler ..., 8-1-14 (hate All N---ers), NFL (N---er For Life), BOS

(<u>B</u>rothers <u>o</u>f the <u>S</u>truggle), and a multitude of other gang related tattoos that should be considered offensive ..., but is accepted because of peoples beliefs, norms, and associations.  However, the plaintiff was discriminated against and was subjected to unequal treatment that was not justified.").  Knox denies he confiscated the belt based on the political expression it contained; rather, he maintains the confiscation occurred because the belt represented a threat to institutional security and constituted contraband. *Defendants' Exhibit 1 (Affidavit of Jeffery Knox) - Court Doc. No. 11-2.*

In order to establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact....  Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977).  "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because

16

of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel*

*Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation

omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which

merely indicates disparity of treatment or even arbitrary administration of state powers,

rather than instances of purposeful or invidious discrimination, is insufficient to show

discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d

262 (1987).

Since this case is before the court on a properly supported motion for summary

judgment from defendant Knox, Nichols bears the burden of producing evidence which

would be admissible at trial sufficient to show that the action of the defendant resulted

from intentional discrimination. *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279.

The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat

summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his]

position" sufficient to avoid summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. at

252.  Instead, the law is clear that the plaintiff must present significant probative evidence

of intentional discrimination to preclude summary judgment in favor of the defendant. *Id*.

at 249.

Initially, the court finds that the inmates identified by Nichols as receiving more

favorable treatment are not truly similarly situated to Nichols; that is, Nichols expressed

his political beliefs by altering a belt, a violation of institutional rules, whereas the other

17

inmates expressed their beliefs in permanent body tattoos.  Thus, "[Nichols'] equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319.

Additionally, the assertions made by Nichols regarding other inmates refute any potential discriminatory intent as Nichols concedes inmates, regardless of race or political affiliation, are allowed to express their political views through body art.  Finally, it is clear from the only evidentiary materials properly before the court that defendant Knox confiscated the belt in an effort to maintain institutional security and ensure adherence to institutional rules.  Nichols has utterly and completely failed to present any evidence, significantly probative or otherwise, that political discrimination constituted a motivating factor in the decision to confiscate his belt.  The inconsistencies in treatment of inmates with tattoos espousing divergent political views do not warrant an inference of discriminatory intent and, instead, refute the presence of discrimination based on political affiliation.  Beyond his self-serving and conclusory allegation of political discrimination, Nichols produces nothing which suggests that political animus motivated Knox's action. Nichols has therefore not been denied equal protection of the law with respect to the confiscation of his belt and the defendant is entitled to summary judgment on this claim.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendant's motion for summary judgment be GRANTED.

2.  Judgment be entered in favor of the defendant.

3.  The costs of this proceeding be taxed against the plaintiff.

4.  This case be dismissed with prejudice.

It is further

ORDERED that  on or before April 21st, 2009 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 8th day of April, 2009.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE